UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| **CLAYTON ROBINETTE** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. _____ |
| v. ) | |
| ) | |
| **KENNEY ORTHO GROUP, INC.** ) | |
| **208 Normandy Court** ) | |
| **Nicholasville, KY 40356** ) | |
| ) | |
| **SERVE:** ) | |
| **Theodore Martin, Reg'd Agent** ) | |
| **208 Normandy Court** ) | |
| **Nicholasville, KY 40356** ) | |
| ) | |
| **Defendant.** ) | |

**COMPLAINT**
\* \* \* \* \* \* \* \* \* \* \* \*
**JURY TRIAL DEMANDED**

Comes now the Plaintiff, Clayton Robinette, and for his Complaint against Kenney Ortho Group, Inc., states as follows:

**PARTIES**

1. The Plaintiff, Clayton Robinette (hereinafter referred to as "Mr. Robinette" or "Plaintiff"), is domiciled in the Commonwealth of Kentucky, residing in Fayette County, Kentucky.

2. Defendant Kenney Ortho Group, Inc. (hereinafter referred to as "Kenney"), is a Kentucky for profit corporation authorized to do business, and currently conducting business, in the Commonwealth of Kentucky. Kenney's headquarters are located at 208 Normandy Court, Nicholasville, Kentucky 40356. Kenney's Registered Agent is Theodore Martin, 208 Normandy Court, Nicholasville, Kentucky 40356.

## JURISDICTION AND VENUE

3. Before filing this Complaint, Mr. Robinette filed charges with the EEOC. Mr. Robinette received a right to sue letter from the EEOC and this Complaint is being filed within 90 days after receiving the EEOC's right to sue letter.

4. Mr. Robinette's claims are in excess of $75,000.00, the jurisdictional minimum of this Court.

5. Jurisdiction and venue are proper in this Court pursuant to, *inter alia,* KRS § 344.450 and 28 U.S.C. § 1331. This Court has jurisdiction over Plaintiff's claims pursuant to, *inter alia,* KRS 23A.010(1) and KRS 344.450.

## UNDERLYING FACTS

6. Mr. Robinette attended college at Eastern Kentucky University ("EKU") in Richmond, Kentucky. He graduated on Friday, December 13, 2019.

7. On Tuesday, December 17, 2019, Mr. Robinette began his post-collegiate professional career with Defendant Kenney at its headquarters in Nicholasville, Kentucky.

8. Mr. Robinette's journey from EKU to his first "real world" job would have been a very big deal for him, regardless. It was a particularly poignant occasion, however, because Mr. Robinette has lived most of his life with Tourette's Syndrome.

9. Per the National Institute of Health, "Tourette syndrome is a complex disorder characterized by repetitive, sudden, and involuntary movements or noises called tics."[1] These tics typically show up in childhood, and can manifest in several different ways. The severity of these tics can also wax and wane over time.

---

[1] https://ghr.nlm.nih.gov/condition/tourette-syndrome#genes

**10.** There is no known "cure" for Tourette's, it can only be managed. For Mr. Robinette, Tourette's is a daily fact of life that he has lived with for many years.

**11.** Once again, per the NIH:

> Tourette syndrome involves both motor tics, which are uncontrolled body movements, and vocal or phonic tics, which are outbursts of sound. Some motor tics are simple and involve only one muscle group. Simple motor tics, such as rapid eye blinking, shoulder shrugging, or nose twitching, are usually the first signs of Tourette syndrome. Motor tics also can be complex (involving multiple muscle groups), such as jumping, kicking, hopping, or spinning.
>
> Vocal tics, which generally appear later than motor tics, also can be simple or complex. Simple vocal tics include grunting, sniffing, and throat-clearing. More complex vocalizations include repeating the words of others (echolalia) or repeating one's own words (palilalia). The involuntary use of inappropriate or obscene language (coprlalia) is possible, but uncommon, among people with Tourette syndrome.[2]

**12.** Mr. Robinette's Tourette syndrome is being managed through medication and regular visits to his doctor. His tics are generally simple motor tics, such as subtle shoulder or mouth adjustments. He also has some vocal tics, which can include throat-clearing or coughing. Mr. Robinette's tics move in cycles of weeks or months. Thus, he may have a month-long period where his throat-clearing tic is more pronounced, followed by a subsequent period where he coughs more. When Mr. Robinette is experiencing periods of high stress or emotion, his tics sometimes become temporarily more pronounced.

**13.** Mr. Robinette's Tourette's syndrome substantially limits, among other things, his major life activities of speaking, communicating, interacting with others, and working. If Mr. Robinette were to stop taking his medication, his Tourette's syndrome would substantially limit these major life activities even further.

---

[2] https://ghr.nlm.nih.gov/condition/tourette-syndrome#genes

3

**14.** When Mr. Robinette first applied with Kenney, the application asked him to identify if he had any disabilities. He marked yes, and specifically indicated that he had Tourette's syndrome.

**15.** Prior to beginning work for Kenney on December 17, 2019, he had a phone interview and an in-person interview.

**16.** For the first approximately three weeks in his position, things were going extremely well for Mr. Robinette. As Kenney's Operations Assistant, he was receiving good feedback on his work from his supervisor, and he was thriving in his new role.

**17.** On Monday, January 6, 2020, Mr. Robinette received an instant message from Pamela Birt ("Ms. Birt"), Kenney's Human Resources Director. Ms. Birt directed Mr. Robinette to come to her office for a meeting. Mr. Robinette did as he was told.

**18.** When Mr. Robinette arrived at Ms. Birt's office, Ms. Birt and Mr. Robinette's supervisor, Cody Meier ("Mr. Meier") were already there. Ms. Birt proceeded to inform Mr. Robinette that HR had received a complaint from the Kenney Marketing Director, who occupied the office next to Mr. Robinette, about Mr. Robinette's coughing. Ms. Birt then flippantly asked, "Is it Tourette's or something?!" Mr. Robinette confirmed that his coughing was caused by his Tourette's Syndrome.

**19.** Ms. Birt and Mr. Meier informed Mr. Robinette that sound-absorbing tiles had been ordered for his office and instructed Mr. Robinette to move his desk away from the office wall that he shared with Kenney's Marketing Director.

**20.** Mr. Meier then told Mr. Robinette that their meeting had no bearing on Mr. Robinette's job performance, and further stated that Mr. Robinette was exceeding all expectations for his position.

**21.** Shortly after the meeting, Mr. Meier sought out Mr. Robinette and told him that he could not imagine how hard the meeting must have been for Mr. Robinette, and reiterated that the meeting had no bearing on Mr. Robinette's job performance. Mr. Meier also told Mr. Robinette that he was exceeding all expectations that Mr. Meier had for the position when Mr. Robinette started the job. Mr. Meier then took Mr. Robinette out to lunch.

**22.** On the same day as his meeting with Ms. Birt and Mr. Meier, Mr. Robinette moved his desk to the opposite side of his office from the wall that he shared with the Marketing Director.

**23.** Mr. Robinette proceeded to carry out his job duties, and he did not receive another complaint about the noise of the coughing tic associated with his Tourette's Syndrome.

**24.** On January 13, 2020, one week after his meeting with Ms. Birt and Mr. Meier, the sound-absorbing panels arrived, and Mr. Robinette installed them himself the same day.

**25.** Among other accomplishments, after his meeting with Ms. Birt and Mr. Meier, Mr. Robinette successfully negotiated a deal with Verizon to save Kenney thousands of dollars per year on its phone service.

**26.** As Kenney's Operations Assistant, part of his duties involved ordering various parts and supplies from vendors. His interactions with such vendors were usually brief, and typically amounted to Mr. Robinette relaying the part number and quantity needed by Kenney, which was then fulfilled by the vendor.

**27.** On January 17, 2020, Mr. Robinette's employment with Kenney was summarily terminated. Despite recent commendations about his work, Mr. Robinette was told that he was being terminated because he was not "getting and maintaining vendor relationships."

This made little sense because, as stated *supra*, the extent of Mr. Robinette's "vendor relationships" was calling their customer service line to order parts.

28. When Mr. Robinette asked for clarification about what, specifically, the alleged issues Kenney had with his performance were, Kenney was unable to do so.

29. Ms. Birt then explained that she had supposedly looked at other positions within the Company for Mr. Robinette, but that she had been unable to find any.

30. In reality, the alleged, performance-related reason given by Kenney for terminating Mr. Robinette is not the real reason he was terminated. Instead, Kenney fired Mr. Robinette because of his disability, that is, Tourette's Syndrome.

31. The pretextual nature of Mr. Robinette's termination is further evidenced by the position statement submitted by Kenney to the EEOC, in which Kenney admitted that Mr. Robinette's disability was a reason for his termination.

32. Mr. Robinette hopes that this lawsuit will bring justice for what has happened to him, and that through it he can help demystify and destigmatize Tourette's Syndrome, which affects millions of people across the world.

**COUNT I
DISCRIMINATION ON THE BASIS OF REAL
OR PERCEIVED DISABILITY IN VIOLATION OF THE KENTUCKY CIVIL RIGHTS
ACT AND THE AMERICANS WITH DISABILITIES ACT**

33. The Plaintiff restates and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

34. Defendant Kenney is an employer as that term is defined by the Kentucky Civil Rights Act, KRS Chapter 344 ("KCRA") and the Americans with Disabilities Act, 42 U.S.C. § 12111 ("ADA").

**35.** KRS § 344.040(1) makes it illegal for an employer to discriminate against an individual because the person is a qualified person with a disability. It also prohibits an employer from limiting, segregating, or classifying employees "in any way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect status as an employee… because the person is a qualified individual with a disability…" *Id.* at (2).

**36.** Claimant is a qualified individual with a disability under the KCRA and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, as amended in the Americans with Disabilities Act Amendments of 2008.

**37.** In the alternative, Mr. Robinette was regarded as or perceived as disabled by Kenney.

**38.** The Defendant discriminated against Mr. Robinette, in the form of terminating his employment, because of or on the basis of him having Tourette's.

**39.** In the alternative, the Defendant discriminated against Mr. Robinette because of or on the basis that it perceived or regarded Mr. Robinette as disabled.

**40.** Mr. Robinette was otherwise qualified for his position with the Defendant.

**41.** Mr. Robinette was able to perform the essential job functions of his position with the Defendant, with or without reasonable accommodation.

**42.** Mr. Robinette was not treated the same for all employment-related purposes, including adverse employment actions, as other persons not so affected, but similar in their ability or inability to work.

**43.** By reason of the Defendant's disability discrimination towards Mr. Robinette, he is entitled to any and all legal and equitable remedies, pursuant to KRS 344.040, *et. seq.*, and the ADA, *et. seq.* including damages for lost wages, emotional distress, attorneys' fees and

costs, and equitable relief in the form of job reinstatement, or in the alternative, damages for front pay.

## COUNT II
## FAILURE TO ACCOMMODATE IN VIOLATION OF KRS 344, *et seq.* AND THE ADA

44. The Plaintiff restates and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

45. Plaintiff is a qualified individual with a disability under the KCRA and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, as amended in the Americans with Disabilities Act Amendments of 2008.

46. Mr. Robinette was otherwise qualified for his position with the Defendant.

47. Mr. Robinette satisfied the required skill, experience, education, or other job-related requirements for his position with the Defendant.

48. Mr. Robinette was able to perform the essential job functions of his position with the Defendant, with or without reasonable accommodation.

49. The Defendant knew or had reason to know about Mr. Robinette's disability.

50. Mr. Robinette's employer, the Defendant, knew or had reason to know that Mr. Robinette was entitled to a reasonable accommodation for his Tourette's syndrome.

51. The Defendant failed to engage in the "interactive process" necessary to assess the availability of a reasonable accommodation, including the availability of alternative accommodations, such as the availability of remote work.

52. The accommodation of Mr. Robinette's disability would not have caused Kenney an undue hardship or expense.

**53.** By reason of the Defendant's failure to engage in the interactive process with Mr. Robinette, he is entitled to any and all legal and equitable remedies, pursuant to KRS 344.040, *et. seq.*, and the ADA, *et. seq.* including damages for lost wages, emotional distress, attorneys' fees and costs, and equitable relief in the form of job reinstatement, or in the alternative, damages for front pay.

**54.** Alternatively, the Defendant failed to provide Mr. Robinette with a reasonable accommodation for his disability, as required by the Kentucky Civil Rights Act and the ADA.

**55.** By reason of the Defendant's failure to reasonably accommodate Mr. Robinette's disability, he is entitled to any and all legal and equitable remedies, pursuant to KRS 344.040, *et. seq.*, and the ADA, *et. seq.* including damages for lost wages, emotional distress, attorneys' fees and costs, and equitable relief in the form of job reinstatement, or in the alternative, damages for front pay.

## **PUNITIVE DAMAGES**

**56.** The Plaintiff restates and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

**57.** The aforementioned illegal conduct by the Defendant was intentional, willful, and malicious. These actions were carried out with flagrant indifference to Mr. Robinette's rights, were effected with an awareness that the conduct would result in physical and emotional injury, and were specifically intended to subject Claimant to cruel and unjust hardship.

**58.** As a result, Defendant's conduct justifies a judgment of punitive damages, as permitted by applicable law and due process, in an amount to be determined by a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Clayton Robinette hereby demands judgment against the Defendant, Kenney Ortho Group, for violation of his rights pursuant to the Kentucky Civil Rights Act and the ADA (including its amendments) as follows:

(a) a trial by jury;

(b) compensatory damages, including, without limitation, pursuant to the Kentucky Civil Rights Act and ADA, past and present lost wages and equitable relief in the form of reinstatement, or, in the alternative, front pay, in such amounts as shall be proved at trial for his economic and other losses, and his lost benefits;

(c) punitive damages;

(d) reasonable attorney's fees, reasonable expert witness fees, and other costs of the action pursuant to the Kentucky Civil Rights Act and the ADA;

(e) interest calculated at the prevailing rate;

(f) equitable relief by this Court as may be appropriate, including reinstatement to his job, or in the alternative, an award of front pay; and

(g) any and all other relief to which he may be entitled, including, without limitation, damages for emotional distress.

Respectfully submitted,

ROBERT ROARK, PLLC

   */s/ Tyler Z. Korus*
Robert L. Roark, Esq.
Tyler Z. Korus, Esq.
ROBERT ROARK, PLLC
401 Lewis Hargett Cr., Ste. 210
Lexington, Kentucky 40503

Telephone: 859-203-2430
Facsimile: 859-523-6351
Rob@robertroarklaw.com
TKorus@robertroarklaw.com
**COUNSEL FOR PLAINTIFF**
**CLAYTON ROBINETTE**